College National Bank of Nevada PRACTICES  Gov. Bruce H. Jackson's Office itís all I have Okay, the next argued case is number 15-5105, Whit Associates against the United States, Mr. Kim. Good morning, Honors. I will tell you that I will be able to argue this without any finger gestures, referral to technology or any gestures of any type. You can go right back to first-year contracts. Absolutely. Offer, counter-offer. That is correct. Is that an exception? This is a relatively straightforward case from a technical standpoint. So may it please the Court. Whit respectfully requests that this Court reverse the decision of the Court of Federal Claims for two specific reasons. First, Whit had standing to challenge the agencyís responsibility determination. The dismissal of Whitís claim on the basis of lack of standing by the Court of Federal Claims was a misapplication of appropriate legal standard. I think that critical to your argument is this concept of whether you revived or withdrew your offer. I think thatís critical to the entire outcome in this case. So if you wouldnít mind jumping right to that and tell us why the Court of Federal Claims was wrong in its fact-finding that you had in fact not reinstated, revived, I donít even know what word to use, but your offer. We would characterize it as revive, as described in the Canton Shipping Corp case. Iíd be happy to turn to that. However, I would like to note that this isóWhitís position is that the dismissal of Count 1 is a standing jurisdictional-based dismissal and should not have gone to the merits of the case. That is in fact the Court of Federal Claimsí error. They misapplied this Courtís requirements in the Impreza Construcciones case, which state that where a responsibility determination is challenged and that challenge would have resulted in the disqualification of all other offers that the protester does have standing, is an interested party for standing for jurisdictional purposes. The Court instead turned to these two-part jurisdictional tests within the Court of Federal Claims and went to the merits of the issue with regard to our second claim, the fact of our expiration of our proposal and failure to revive. So it is Whitís position that in fact it is not necessary for this Court to look to the merits of the case with regard to the first part, the first count of dismissal based on lack of standing. However, as you wouldó So if they had no chance of winning the award, they still had standing to challenge. Actually, in fact, if you read the Impreza case, it states, as I quote, ìIf an appellantís bid protest were allowed because of an arbitrary and capricious responsibility determination by the contracting officer, the government would be obligated to re-bid the contract and appellant could compete for the contract once again. Under these circumstances, the appellant hasóand Iíll skip some of the intervening languageóstanding to challenge the award. That is exactly the circumstances in this case. The failure of the agency to conduct a responsibility determination and had it done so appropriately, Whit alleges that Platinum would have been disqualified from competition. Therefore, with no remaining offerors for the solicitation, the contract would have to have been re-bid. In fact, that would permit Whit to submit a new offer, which would have beenó What were the circumstances, I donít recall, of Impreza? I remember it didnít involve a withdrawn offer, but what was the argument about the competitorís standing? I donít recall the specifics off the top of my head. I can look that up, but I donít recall. My recollection was it was a responsibility challenge, which essentiallyó But a responsible basis. That is correct. Thatís my understanding, but I donít know well enough to speak to that detail right off the top of my head, Judge Warren. As you were asking your question, turning to the merits of the second part of the claim, it is also Whitís position that the Court of Federal Claims erroneously concluded that Whitís proposal had expired and was not revived through conduct. As stated in the Candidate Shipping Court case, a contractor can revive its offer either expressively or impliedly through conduct. In this case, first, as the Court of Federal Claims correctly held, Whit did not respond to the question asked. The question was asked by someone other than the contracting officer, where there is no express delegation of authority within the record itself that indicates this person had the authority to make this question. Secondó But regardless of whether that person had the authority, isnít it the caseóI donít know this law very well, but I think that when you make an offer, itís only good for a certain window of time. Can you tell me what that window was here? The window of time listed in the solicitation in the FAR Clause 52.2.12-1.12 is 30 days, but it does not state that the offer expires. It states that it is open for a period. It does not necessarily state that it expires. Traditionally, my understanding, my work in this area is that the question is asked at the time of award, that when the contract is worthy, they are requested to confirm that their offer still stands as valid. This is a slightly unorthodox process that was used in this procurement, but yes, it is a 30-day period in the regulation. And that seems like a good practice, because you wouldnít wantóyou give an offer to the government and they do nothing, and three years later they say, ìAh, I accept.î You do wantóI mean, itís in the benefit of the contractor as well as the government to have a discrete time period like that so that the contractor knows the government canít come back and accept an offer years down the road that would be not any longer advantageous to the contractor. Absolutely. That is the intent of the statutoryóof the regulatory requirement, and the cases have clearly shown that it is intended to protect contractors. So it was clear under these facts then that by the time that government official came and asked whether your proposed pricing was still valid and could it be maintained as valid until March of 2015, it was well beyond the solicitation 30-day window. It was like 200 days in or something. Two hundred plus, Your Honor. Thatís correct. So clearly, 200 days in, thereís no way you could have been bound to the proposal that you submitted. Youíd have to confirm it. That is correct, Your Honor. Okay. So you have to confirm it. So she comes to you and says, ìAre you still willing to be bound by your proposal?î And your response was what? What was your response? I think it was, ìNo, we would wantóî Here it is. I have a quote. ìIt has been 214 days since our proposal was submitted. WIT associates want and need to submit a final proposed revision with updated rates given the economic conditions. Why isnít that clearly a no? We are not willing to honor the same pricing.î Which was the question asked to you. Because they never said no. If you read it, it says they want and need but never refused to actually extend. Did they accept? Iím sorry. Go ahead. Did they accept? You have an offer and either you have an acceptance, a rejection, or a counteroffer. What your client did was make a counteroffer. Weíd like a higher price. WIT stated that it needs and requires a proposal revision but did not state that it would not keep its offer open. It says you need a proposal revision with updated rates given the economic conditions. Isnít it reasonable? I have to review the lower court for substantial evidence. I donít have carte blanche to do any kind of de novo review. Why isnít there substantial evidence for her to have found that when you say you want and need to submit a final proposal with updated rates given the economic conditions, why isnít it reasonable for her to have concluded that that meant you were going to raise or change your rates given the change in the economic climate? I donít get to do it de novo. I have to put my thumb on the scale in favor of what she decided because itís a fact finding. Absolutely, Your Honor, and I think thatís whatís clear here is that if you look at the history of the procurement in its context generally, WIT was the incumbent contractor, had been serving under this contract for 16 years. Its bid was the only other technically acceptable offer that was submitted. It was also 40% below the price submitted by its competitor. Its competitor was debarred from procurement in the course of the procurement. This has gone through multiple bid protests. WIT has expended tens of thousands of dollars through maintaining its status through the protests, bid preparation costs and legal fees, and I would suggest that in light of the general nature of the relationship that if there was any question as to whether or not WIT was willing to extend its offer, first, it was unreasonable for the agent to simply assume when WIT posted that it was a ìno.î It would have been appropriate and more reasonable for the agent to at least validate the response. A ìnoî is ìwe reject.î Letís go back. You agree, donít you, that thereís offer, acceptance or rejection or counteroffer? Yes, Your Honor, thatís correct. A ìnoî is ìwe reject.î What you had was a counteroffer. Do you agree with that? I would suggest that thereís a counteroffer in the request. Thatís correct, Your Honor. So when you have a counteroffer, it is not an acceptance. That is correct. It is not an acceptance. I never stated that it was an acceptance. So weíre in accord here. I would suggest, however, that in accordance with the actual general nature of the history of the procurement, WITís follow-up actions and questions that follow up after the initial responseó Its follow-up actions are to keep saying, ìHereís our counteroffer.î No, they had stated, ìPlease respond to what we have requested,î which is, in fact, ifó ìPlease accept our counteroffer.î No, the answer is, ìPlease let us know whether or not it is acceptable or not.î And if, in factó And eventually somebody says, ìDo you stand by the original?î And the answer is, ìNo.î And if WIT had been told, ìWe are not going to be doing final offers, final revisions,î WIT would have stood by its offer. And its conduct, the fact that it didó Thatís pure speculation. SubsequentlyóIím sorry? Where is that in the record? That was part of the case below that was arguing that had they been given the opportunity to respond, they would have done so. My understanding is that theó What factual proof is there in the record of that? The factual proof is the history of the procurement itself. If you look at the history, WIT wasó That says to us that thereís plenty of evidence to support that court belowís finding. Iím sorry, could you clarify? I didnít understand the question. Itís not a question. Itís a statement. What youíre saying is that we had a course of conduct which we believe supported a determination that they would have changed their position. But youíre also saying thereís a course of conduct in which they didnít change their position, and that seems to at least be enough to support the judge belowís finding that they wouldnít have. So the standard is that they could have revived their offer either expressly or impliedly through conduct. If you are going to assume for this purpose that the initial response was a counteroffer, as we have discussed, the follow-up conduct was a series of follow-up communications with Ms. Smith, who was apparently the one who was given the authority to make this inquiry, which was not responded to. WIT did attempt to revive its offer by communicating with the agency. The agencyís refusal or inability to actually respond to WITís request precluded WIT from having the opportunity to revive because it was never told, ìNo, you will not be provided an opportunity to change your offer. There will be no proposal revisions. You must stand by your offer.î There was no citation to the FAR clause itself, which would have indicated to WIT clearly, ìYou must accept or this offer will be withdrawn.î The fact that this was not part of the communication in light of the specific circumstances of this procurement, the fact that it is a 40% plus savings to the government for a contractor that had been in place for over 16 years, successfully performed on the contract proceeding, had worked through, as we discussed, multiple years of protests, preparation, resubmissions, and communications with the agency, it seems unreasonable for the agency to have concluded that there is no attempt to impliedly or expressly through conduct revive its offer, when in fact the agency refused to interact. They did not answer the inquiries. Was there any attempt in the Court of Federal Claims to explain or justify the delay, the lack of response when there were inquiries as to whether that offer was renewed? No, Your Honor, not satisfactorily to our understanding. It was simply they did not respond. My understanding from the court below, I was not counsel at the time, from my reading of the record was that they felt they did not need to respond and therefore did not. Okay, letís hear from the other side. Thank you. Letís answer the other side. Mr. Canizares. Good morning and may it please the Court. WITís offer expired and was not revived. WIT made a business decision. It was asked expressly whether it would stand by the prices in its offer and it never said yes. Counsel said it never said no, but the more important question is it never said yes. And the burden, as the case law is clear, is on the offeror. If an offerorís offer is subject to some time limitation and that time limitation lapses, the responsibility is on the offeror, if it still wishes to have that offer be considered, to revive it somehow. And that is the question here in the record. Itís very clear that in the face of these e-mails that WIT was not interested in standing by the terms of that offer. When it was asked that question, it said it wanted and needed to submit revised pricing on December 23, 2014. And then it reinforced that message in subsequent e-mails at A509 and A512 of the record. We have some further e-mails from WITís president saying, again, emphasizing a need to submit revised pricing. In the trial court, getting back to the court, the judgeís question about the standard of review here, the trial courtís factual finding was not clearly erroneous, that it was difficult, as she wrote in her opinion, difficult to interpret WITís e-mail in any other way than as a negative response to the question that had been posed by the Navy. Now, WITís principal argument for this court is that, well, indeed, we did want to revive our offer. And trust us, there may not be anything in the record. But thatís obviously not sufficient in a record review case. And also this notion of an abstract interest in the competition is what theyíre relying on. Well, we were clearly interested based on our past conduct, and this contract had been in existence for a long period of time. That, again, is not sufficient, because what the case law says, and I would draw the courtís attention to the International Graphics case in particular, that words or conduct to revive a bid must indicate that you are willing to accept on the terms of the offer as submitted. So merely being interested in the contract or in the procurement in some sort of abstract sense is really not sufficient. But isnít it in the governmentís interest to have competition in bidding? Here, without a renewal of this participation, there was, I gather, just one sole bidder. Is my understanding correct that the competing or potentially competing bidders donít know and are not told, and itís expressly concealed, the amount of what their competitors are bidding? Well, Your Honor, this was not a sealed bidding process under FAR Part 14. Itís sort of a different system, if thatís what the courtís questioning. Thatís what I was wondering, whether Platinumís bid and the amount of their bid, the amount of which bid, was publicly known. Well, certainly the amount of the bid would not have been publicly known. That was my question, the amount of the bid. So when you said this isnít a sealed bidding, what were you telling me? Well, that itís more like a FAR Part 14, a sort of negotiated procurement, and in that sort of situation where you have the contracting officer dealing with these offerors. But whatís important to emphasize in getting to, I think perhaps the judgeís question is, there was an equal treatment of these offerors, and that the very same question was posed at the exact same time to both offerors. Well, it looked fair enough, but trying to understand, thereís nothing on the record, and counsel didnít know. Very strange, dilatory responses. Maybe I will, just donít bother me. And if, in fact, the delay was to get a better fix on the competitive situation? Your Honor, the trial court actually did address the question. Witt had made an argument before the trial court about the Navy acting improperly by not responding to these emails promptly. The trial court did address that. Itís at footnote 9 of the decision. Itís A18 of the record. And the argument that had been made was that the person with the Navy who had sent these emails had not made known to Witt that her view was that the offer had expired, and that somehow it was concealing that information from Witt, when it should have been made known. The fact is, as the trial court noted, that was a prudent decision to make at the time, because this protest had been pending for so long, number one, but also Witt had made clear in its email, according to the Navy, that it was not willing to stand by the terms of its offer. But the final decision in the procurement, the award decision, was still pending. So it was appropriate in that circumstance for the Navy to continue those deliberations. But I do want to emphasize again that the obligation, the trial court also noted on page 823 of the record, that there is no obligation on the part of the Navy to notify Witt of something of which it should already be aware. That is, a term in the solicitation itself that says that your offer is subject to some time limitation and that it had been expired. A couple other points, and one is that there obviously is no dispute that the offer expired. And moreover, the trial court reached a factual finding that the offer had expired. And as the government has argued in our brief, in our submission, the appropriate resolution would be to dismiss the protest for lack of standing. Because this case does really fall within the same type of factual scenarios that this court has confronted in other bid protests, where a party fails to demonstrate that it's an interested party with a requisite direct economic interest because it has failed to submit a bid, it has filed late. In the federal data case in particular, it withdrew from the competition. Those cases demonstrate the same proposition here. And the Camden shipping case is directly on point in that regard, where you had an expired offer, which meant that that offeror no longer had the requisite direct economic interest. I want to address the argument that Witt makes now, which is that it nevertheless had standing to argue the responsibility determination, and it is relying on IMPRESA. First of all, that is an argument that was not made before. I should know this already. Are you the government lawyer or Mr. Smoot's lawyer? I'm the government lawyer. Well, good, because then I won't ask you what dinner is like in the Smoot family household on Christmas Eve. I cannot speak to that, Your Honor. Because these are two brothers fighting, so it's kind of a crazy situation. I also, by the way, want to know if it's the same Smoot that they measure the Harvard Bridge with. I don't know if they're aware of this, but perhaps someone in their family or by the same name lays down every year and the Harvard Bridge is measured in Smoot's, the bridge between Boston and Cambridge. So I'm kind of curious if it's either of these gentlemen as well. But I won't ask you those questions. I'll save them for the other attorney. So for you, though, why wouldn't our government want the competitive bidding situation where obviously they waited nine months to have this contract, and then after they asked whether you'll keep your bid open until March 15th, there was lots of time to allow the other side to submit their revised pricing. And given that they were the incumbent who had been doing this work for many, many, many years, and given that their proposal, I mean, any contracting officer could have looked at their only two proposals, and one of theirs was 40% less than the other one, why in the world didn't the government say, sure, you could submit your updated pricing? I mean, March 15th was how many months away from when the request was sent to them about whether they would maintain the same pricing? How many months? Well, I think it was from approximately March to December. December. So in December, she said, will you maintain your same pricing through March? So she clearly knew the decision wasn't going to get made until three to four months down the road or whatever. So why in the world not let them? I mean, they're just talking about revising their pricing. I can't imagine that takes very long to do. And given that their proposal was 40% less than the other one, I guess I kind of feel like you're not spending my tax dollars very well in this case because you had an incumbent that there's no evidence in the record was doing a poor job and was offering to continue doing the same job at 40% less and was saying, well, I'm going to have to probably raise my rates a little bit. Your Honor, I can only speak to what's in the administrative record, as could the court below. And really what the administrative record reflects is, number one, this protest, this procurement had been tied up in GAO protests for many years. This had been hard fought. A hard fought battle that was coming to a close. Yeah, I mean, it's worse when it's family. That's the way it goes. Right. And so in that regard, it is understandable in our submission for the contracting officer in that position to be reticent to take a step that may open itself up to allegations of bias or favoritism, et cetera, if it were, for example, to engage in some sort of conversation with wit. Now, I'm not suggesting that the contracting officer couldn't have entertained the idea, considered it, had a conversation, sent further emails. Certainly, that would have been possible. But the question... Or just responded to the four different inquiries that wit had made, right? Because wit followed up four separate times afterwards and said, hey, are you going to let us submit a new proposal? Hey, we need to submit a new proposal. Right. And, Your Honor, she ultimately did respond. She responded to the email on January 30th, and she apologized for the delay and said hopefully this will be resolved soon. So no doubt there was a delay in the response. Okay, wait. But I apologize that the delay, this will be resolved soon, isn't actually the resolution. You're right. She responded. She said, oh, I'll get back to you. And they never did. Well, until the award was finalized. And you're right, Your Honor. There was no engaging wit on this idea of revising its prices. But I would point out that, number one, there was no obligation to entertain that idea after such a passage of time. Oh, I get it. I get that. And I can only speculate into what was in the mind of the contracting officer at the time. I take your point. However, especially with the deferential standard of review that we're looking at, the question really comes down to on the merits, was the Navy, did it act rationally? And was their interpretation of these emails and these responses, was that rational? Was it arbitrary or capricious? And on that, the court reached the right result. Turning back to the standing question, the reliance on IMPRESA is misplaced. Counsel suggested in response to Judge Wallach's question that even if the protester had no chance of obtaining the contract, of winning the award, that somehow it could still have standing. That's not what IMPRESA said. And IMPRESA, the court itself, said very clearly in the decision, this case is unlike other cases we have dealt with where an offeror has withdrawn. Let me interrupt you. I agree. It's not what IMPRESA says. But this is an interesting and troublesome question as to whether the government's view is that we shouldn't even have a chance to come into court at this stage. And I think that what IMPRESA was building upon, because there were unique situations, as I recall, in a foreign country and a lot of strange complications, that one, that it's not a blanket rule. And my question for you is, is the government in fact seeking a blanket rule that a potential bidder, in fact the incumbent and so on, that the circumstances are irrelevant? If it turns out that the would-be bidder's bid is not accepted, has no opportunity to challenge the situation? Your Honor, no. We're not seeking a blanket rule that is along the lines of your question. The key fact that distinguishes this case from IMPRESA is the expiration of the offer and the lack of its revival. Are you asking a rule for forever or the opportunity to in fact look at it and figure out whether it would be reasonably appropriate to give this now disappointed bidder incumbent a day in court? Well, the day in court turns on whether or not that individual, the protester, is... But then the court can decide against it, as they did. Correct. In IMPRESA, that's true. But you're saying it can't even go to court. Well, Your Honor... You're saying in the circumstance where the offer has expired, they can't. In circumstances where the offer has expired, it brings it more into the lines of the Labatt case, or MCI, or rec services, in which this court has recognized that where you no longer have a direct economic interest, you no longer have a substantial... But you're not really saying that, are you? Because if a litigant came into court and said, yes, the offer expired, but here are the reasons the offer expired which make it an invalid expiration, they would have standing to make that argument, would they not? Well, that is very circumstance dependent. Of course it is. And in this particular case where the protester has the burden of proof on jurisdiction in demonstrating standing, it is appropriate for the court to evaluate whether there is a preponderance of evidence to meet that burden. But what you're being asked is, are you seeking a blanket rule in that circumstance? And I think the answer is no. No, I am not seeking a blanket rule. And I don't even think you're seeking a blanket rule with regard to expiration, right? What did the lower court find? Did they find withdrawn? What did she find precisely with regard to the offer? It wasn't just expired. It was expired and an express statement was made that it would not be renewed at that same pricing. What she stated, she found as a matter of fact, the offer had expired on June 23, 2014. She also held that the Navy's conclusion that the offer was not revived was not arbitrary or capricious. So you're saying you have to find the merits as a matter of fact, and then instead of saying you lose on the merits, you say you had no standing to be here at all? That makes no sense. No, Your Honor, that's not our position. We are suggesting that at the standing stage, there needs to be a showing, a sufficient showing to make a jurisdictional showing of standing. But even if the court disagrees with us on standing, it should nevertheless affirm there is no need for a remand. And I'll make two points on this briefly. The first is that in order to prevail on any sort of remand, this court would have to find that the trial court's conclusion, its fact finding that there was no substantial chance of obtaining the award was clearly erroneous in order for Witt to get this contract on a remand. The reason for that is prejudicial error, of course, is a requirement both for purposes of standing and for the merits. And a protester needs to demonstrate a substantial chance of obtaining the contract on the merits. The Bannum case states that proposition. So here we have a situation where even if there were some theoretically erroneous responsibility determination, the trial courts already addressed the question of substantial chance and prejudice, and appropriately so. So there's no basis to reverse that conclusion. So a remand would really accomplish nothing. Do you want to have Mr. Arden continue the argument? Yes, if I'm out of time, Your Honor. I believe I reserved three minutes. You're well over time. You've used up your time. We're glad to hear what you have to tell us. Thank you. Anything new? No need to repeat what we've already been through. Thank you, Your Honor, and I'll try to go directly to our point, which is while we stand with the Department of Justice and with the argument they've made, we do want to emphasize one issue, which is that Witt's responses to the questions and the communications throughout the final time period of this procurement we contend were clear, and we believe the trial court was correct in its interpretation. Witt repeatedly asked to reprice its proposal, and it asked questions aimed at determining how much longer it had on its more favorably priced incumbent contract. And the contracting officer was reasonable in her determination that they did not wish to stand by their earlier question, their earlier price. However, even if this court finds that that is not the reasonable determination, and nothing in the record contradicts the contracting officer's determination, they may have been interested in award of this contract, but they certainly were not interested in award at any price and not at the price that they had quoted to the government earlier in the year. This court determines, even if the court determines that they had standing, to challenge Platinum's responsibility determination, the court must deny this appeal. Witt cannot show as it must that the contracting officer's responsibility determination lacked a rational basis and violated procurement regulations, and Witt cannot show on the record as it must that there was an unreasonable responsibility determination that was sufficiently prejudicial to Witt. The court can't second guess the contracting officer or substitute its judgment for that of the contracting officer where her decision was rational and supported in the record. The contracting officer had broad discretion in looking at responsibility here, and she reached her conclusion after considering ample evidence, after detailing reasons, none of which were contradicted in the record. She set them forth in writing in Section 6 of the Contract Review Board presentation, following FAR Part 9, and going through each of the seven elements in detail. I think we have the argument. Thank you, Ms. Roriden. We're short of time. Thank you, Your Honor. Mr. Kim, we've run over. Let's make it three minutes. Thank you. I appreciate the time. I'll make two brief points. The first point is this. The court's dismission, if you look to the actual language of the court's opinion on page A17, it states, therefore, the court lacks jurisdiction to consider that aspect of Witt's protest, and to grant the government's motion to dismiss count one of Witt's complaint, challenging the agency's responsibility finding Witt's respect to platinum. The dismissal was a jurisdictional dismissal based on standing. We understand that there was a full description of the responsibility determination in the record. That record was not examined in the lower court's decision. They expressly declined to do so on jurisdictional grounds. It is the position of Witt that that was inappropriate to dismiss on jurisdictional grounds. That, in fact, that if you look at the language of the press, which I think is important, the conclusion of the court was that Witt lacked any chance of winning the award, regardless of the merits of its challenge to the agency's responsibility finding. After making a factual determination with regards to the merits of the other portion of Witt's claim, if you were to take Witt's claim on the basis of its statement that the agency erred in failing to disqualify platinum, the results of that allegation in itself would have required a re-solicitation of the contract because there were no other offerors. Because it would be a re-solicitation of the contract, the withdrawal would not have carried forward. That, in fact, Witt would have had the opportunity to participate in the competition again and therefore did have interest in party status and had a direct economic interest. And that is the position of Witt with regards to that point. With regards to the communications that were sent and the emails, if you were to look to the record on page starting, for example, on A507, the response sent to Mrs. Smith was, we have not received any response to our communication below dated December 23, 2014. A509, please advise the status of the award. We never received a response to our communication advising you that we need to submit revised pricing. A510, the base year ends on March 31st of March. Will the current matter be resolved by then? What is the status? If you'll note, in two of those communications, we never discussed the fact that we need to submit revised pricing. We asked the question very specifically, could you answer our question because, in fact, Witt did, and I think it's important to note that they were never given the opportunity to revive their offer because the government refused to respond. If, in fact, Witt had been informed, your offer is withdrawn because you have refused to extend. That would have given Witt the opportunity it wanted to extend and revive and these communications were intended to communicate that intent to the agency. While, in fact, Witt did not have a chance to, in fact, revive its offer, that is correct. In the record, you will see, if you look at the response from Mrs. Smith, I apologize for the delay in responding. This is A511. Hopefully, the matter will be resolved soon. I will talk to the contracting officer to determine what the government will do if the matter is not resolved by March 31st of March, 2015. Due to the numerous protests, we are having to forward the package to headquarters for review. That would indicate an intent that the government will be getting back to Witt. And the fact that the government kept Witt in the dark and deliberately did so until the actual award of the contract is, in fact, the government's error. That it was unreasonable for the government to deceive Witt in that way, to deceive someone where, again, it is the incumbent contractor with a substantially lower price. It would have been, there is every indication that the government would have been advantaged by simply allowing or asking Witt the question. And it is that, in fact, that is the problem in this case. Do you have any other, no remaining questions? Well, you need to answer Judge Morris' question about the bridge, whatever that was. I will look into it. My understanding is, my communications with the Smiths is that, number one, it is a very interesting Christmas holiday. And, two, I do not think that it is the same Smith family. But I will verify and get back to you. Thank you very much. Okay. Thank you. Thank you. All the cases taken under submission.